### IANNE v. UNITED STATES GYPSUM CO.

(Supreme Court, Appellate Division, Fourth Department. May 13, 1908.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—MINES—SAFE PLACE.

Where intestate, a carman in a gypsum mine, just prior to his injury, had been ordered to take back from the foot of the shaft a load of props with which to support the roof, and the props were being unloaded and delivered to the prop setter when intestate was killed by the fall of a large area of the roof, intestate was not engaged in making the mine safe at the time, and, having no knowledge of the danger attending defendant's failure to properly prop the mine, was entitled at defendant's hands to a reasonably safe place in which to work.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 255.]

2. SAME—NEGLIGENCE—ROOF OF MINE—FAILURE TO PROP.

Where intestate, a carman in a gypsum mine, was killed by a fall of a portion of the roof, and it appeared that a space between 50 and 60 feet square where intestate was working had been allowed to remain without props for more than a month, while defendant and its superintendent knew that the ash rock of which the roof was composed, was liable to fall at any time when jarred by the blasts which were constantly being shot in the vicinity of the unsupported roof, defendant was negligent.

3. SAME—CONTRIBUTORY NEGLIGENCE.

Where intestate was killed by the fall of a part of the roof of a mine in which he was employed while delivering props to the prop setter from a car which it was his duty to operate, and he was doing his work at the time of the accident precisely as he was told to do it, and as he had been doing it ever since he had been in defendant's employ, he was not himself chargeable with negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 757.]

4. SAME—ASSUMED RISK.

Where intestate had no knowledge that any danger existed of a fall of the roof of a mine by which he was killed, and was entitled to assume that the roof would be supported in a reasonably proper manner, he did not assume the risk.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 557.]

5. SAME—EVIDENCE.

In an action for death of a carman in a mine by the fall of a portion of the roof, evidence of defendant's ex-superintendent as to the manner in which the mine was managed and operated for some years, and up to within three or four months of the date of the accident, during the time defendant was superintendent, and that the mine manager directed him

to set off two or more blasts at one time in order to save time and expense, which he refused to do because it would increase the danger of the work, was inadmissible, in the absence of evidence that the same methods continued up to and including the time of the accident.

**6. APPEAL—ADMISSION OF EVIDENCE—HARMLESS ERROR.**

Where, in an action for death of a carman in a mine, the fact that the roof, a portion of which fell and killed intestate, was unsafe, was established practically without contradiction, and, on the evidence the jury could not have found otherwise than that the condition of the mine at the time of the accident was dangerous and unsafe because of defendant's negligence and a verdict in favor of plaintiff was not excessive, defendant was not prejudiced by the erroneous admission of evidence concerning the negligent manner of defendant's operation of the mine some time prior to the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4153–4160.]

Kruse and Robson, JJ., dissenting.

Appeal from Trial Term, Genesee County.

Action by Frank Ianne, as administrator of the estate of Ansilo Ianne, deceased, against the United States Gypsum Company. From a judgment for plaintiff for $2,500 damages and $134.58 costs, and from an order denying a new trial, defendant appeals. Affirmed.

The action was commenced on the 13th day of December, 1906, to recover damages because of the death of plaintiff's intestate, alleged to have been caused solely through the negligence of the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

H. E. Rourke, for appellant.

Eugene M. Bartlett, for respondent.

McLENNAN, P. J. The defendant is a corporation engaged in mining gypsum at Oakfield, in Genesee county, N. Y. There was a shaft 50 or 60 feet in depth sunk to the bottom of the mine, and from the bottom of the shaft were tunnels leading to different parts of the mine, following as near as could be the veins of gypsum. Extending over the strata of gypsum there was a stratum of ash rock, which was of some two feet or more in thickness, and over it was a limestone formation which covered the whole. The gypsum and material necessary to be removed in order to reach the gypsum were loosened by means of blasts, and this loose material was removed from the place where located by means of little cars run upon a tramway, which, when loaded, were moved along the track to the bottom of the shaft, and then raised to the surface of the ground. The ash rock, when exposed to the air, was liable to become slaked and to fall unless properly supported by props; and, as the work progressed, it was the duty of one of defendant's employés, who was called a "prop setter," to place the props in such manner as would prevent the ash rock from coming down, and this was done under the direction of the superintendent or foreman who represented the master. The accident occurred on the 23d day of October, 1906, at which time the plaintiff's intestate, who was an Italian, was engaged with another workman in moving the little cars to the bottom of the shaft from the place where

110 N.Y.S.—32

the material had been loosened, and then running the cars back to the place from which they had started for another load. On the day in question the plaintiff's intestate, with his associate, had gone to the bottom of the shaft with a load of rock, and was directed to take back with him a load of props with which to support the roof. Such props were loaded upon the car, and the car was pushed back to the place from which the load of rock had previously been taken, and were being unloaded and delivered to the prop setter; and, while thus engaged in unloading the props, a large area of ash rock fell upon the plaintiff's intestate, the prop setter, and the associate of plaintiff's intestate. The prop setter and plaintiff's intestate were instantly killed. The associate of the intestate was also caught under the rock, but was not crushed.

It appears very conclusively that plaintiff's intestate was not engaged in making the mine safe. He knew nothing about the danger attending the failure to properly prop the mine. He was not engaged in that work. He simply was asked to deliver and unload the props at the end of the line where he was at work, so that they could be obtained and used by the prop setter. · So that it seems to me clear that the plaintiff has a right to insist that it was incumbent upon the defendant to provide his intestate with a reasonably safe place in which to work. That the place was not safe, and that its unsafe and dangerous condition was known to defendant, is absolutely beyond dispute. It appears that a space some 50 or 60 feet square where the deceased was working was allowed to remain for more than a month without any props, and the experience of the defendant and of its then superintendent taught them that the ash rock was liable to fall at any time when jarred by the force of the blasts which were constantly being put in the vicinity of this large space of unsupported roof. In other words, without going into the details of the evidence, it seems to me that the negligence of the defendant is absolutely established because of its failure to provide the plaintiff's intestate with a reasonably safe place in which to work. That negligence is not only proven by the plaintiff; but the superintendent of the defendant, the only witness called by it, testifies practically to the same thing. There is no basis in the evidence upon which to charge plaintiff's intestate with contributory negligence. He was doing his work at the time of the accident precisely as he had been told to do it and as he had been doing it ever since he had been in defendant's employ. Neither is there anything to support the suggestion that he assumed the risk. He had no knowledge that any danger existed from the falling of the rock, and he had a right to assume that the roof would be supported in a reasonably proper manner.

The appellant insists that the judgment should be reversed because of the erroneous admission of certain evidence; and, while the particular evidence of which it complains is not pointed out in the brief of appellant's counsel, he refers to the whole of the evidence of the plaintiff's witness, a Mr. Watts, which is contained in the record at folios 155–224. Several of the answers given to the questions propounded by plaintiff's attorney were clearly incompetent. Mr. Watts had been superintendent of the mine for some years and up to within three or

four months of the time of the accident. He was permitted to testify, over defendant's objection, as to the manner in which the mine was managed and operated during the time he was superintendent, and such testimony was received upon the theory that it would be shown that the same methods had continued up to and including the time of the accident. But such connecting evidence was not given, and a motion was made to strike out the evidence already given, which was denied. The witness was also permitted to testify to what had been said to him by the manager of the mine in regard to placing blasts, that they wanted him to set off two or more blasts at one time, which he refused to do because it would increase the danger to the work. He was allowed to say, in substance, that the purpose of such request on the part of the management was to save time and expense. Other evidence of the same sort was given, over defendant's objection, and it was clearly incompetent and was such as to furnish ground for reversal, except that, as it seems to me, it did not have any bearing upon the real issue in controversy in this case, to wit, whether or not the mine at the time of the accident was reasonably safe. As before said, the fact that it was not so is established practically without contradiction. Upon the evidence the jury could not have found otherwise than it did, that the condition of the mine at the time of the accident was unsafe and dangerous because of the failure of the defendant to see to it that the roof was properly supported, and that that unsafe and dangerous condition existed for such length of time as that the defendant knew it, or ought to have known it, by the exercise of reasonable care and diligence. Besides, it cannot be said that the improper or immaterial evidence improperly influenced the jury, because the amount of the verdict was certainly conservative. Here was a bright, healthy young man, 23 or 24 years of age, earning good wages, who was killed, and the verdict was only $2,500. No harm resulted from the reception of the evidence objected to. Beyond question the place where plaintiff's intestate was set to work was unsafe and dangerous in the extreme, and the defendant knew, or ought to have known, that fact. The deceased knew nothing about it. He was performing his work precisely as directed.

The judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except KRUSE and ROBSON, JJ., who dissent.